FILED
2025 Aug-26 PM 01:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

**JACK B. LYLE,**
     Plaintiff,

**v.**                                         **Case No. 1:24-cv-1107-CLM**

**CEI EQUIPMENT COMPANY
LLC *et al.*,**
     Defendants.

## MEMORANDUM OPINION

Jack Lyle sues CEI Equipment Company (d/b/a "KT Pacer"), RC Tway Company LLC (d/b/a "Kentucky Trailer"), Marmon Holdings Inc., and Carl Kirpes. (Doc. 1-1). Defendants ask the court to dismiss for lack of personal jurisdiction and failure to state a claim under Rules 12(b)(2) and 12(b)(6) respectively. (Doc. 7). For the reasons explained below, the court **GRANTS** Defendants' Motion to Dismiss under Rule 12(b)(6) only. Lyle may amend his complaint by **September 9, 2025.**

## BACKGROUND

Because Lyle is defending against a motion to dismiss, the court takes his pleaded facts as true. *Crowder v. Delta Air Lines, Inc.,* 963 F.3d 1197, 1202 (11th Cir. 2020).

### 1. Lyle's Employment with KT Pacer

Lyle is an Alabama resident in his mid-60's. Lyle works in the niche business of manufacturing bulk animal feed trailers. Lyle began working at Warren Manufacturing in the 1980s and became Vice President of Warren responsible for its Birmingham, Alabama operations in 1990. Kentucky Trailer (an LLC owned by Marmon Holdings) bought Warren in 2019. Kentucky Trailer offered Lyle a job with its subsidiary, KT Pacer. Lyle accepted and began working with KT Pacer as a Managing Director.

Lyle quit KT Pacer 34 days later. After honoring his two-year noncompete agreement with Kentucky Trailer, Lyle started his own feed trailer manufacturing company, Circle A Manufacturing, Inc., in Alexandria, Alabama. Less than a year after starting Circle A, a headhunter contacted Lyle about an open position with (none other than) KT Pacer. After communicating with Kentucky Trailer's then President and CEO, Gary Smith, KT Pacer offered Lyle a position as Vice-President of Technical Customer Service and Distributor Development. By the offer's terms, Lyle divested himself of all ownership interest in Circle A. Lyle also signed a new two-year noncompete agreement with KT Pacer.

Lyle performed well in his new spot at KT Pacer. Lyle introduced KT Pacer to his supplier contacts and customers he acquired at Circle A. Lyle's strategic development and leadership increased KT Pacer's bottom line and earned Lyle a $30,000 incentive bonus for 2023. Carl Kirpes, the company's president, wrote letters to Lyle praising his work. Lyle lived in Alabama the entire time he worked for KT Pacer.

## 2. Lyle's Termination from KT Pacer

Less than a year after Lyle started his second tenure with KT, the head of HR called Lyle and fired him "for cause," citing three reasons:

> 1. Lyle flew first class to business meetings in violation of company policy,
>
> 2. Lyle maintained a beneficial relationship with Circle A, and
>
> 3. Lyle was seen with Circle A representatives at a trade show the month before his firing.

Lyle disputes any wrongdoing and claims KT Pacer drained him of contacts and expertise only to fire him and pass the information on to younger executives. According to Lyle, KT Pacer hired him as a strategic decision to sabotage Circle A, a competitor in a niche market, and remove Lyle from the bulk feed trailer business for two years via the noncompete agreement.

### 3. Lawsuit

Lyle now sues KT Pacer, Kentucky Trailer, Marmon Holdings, and Kirpes for age discrimination in violation of state law as well as fraud and civil conspiracy. Lyle alleges:

> **Count I:** "Defendants willfully discriminated against Lyle on account of age in violation of Alabama's Age Discrimination in Employment Act ("AADEA")." (Doc. 1-1, p. 9),
>
> **Count II:** "Defendants undertook a scheme to hire Lyle, removing him as the CEO of a competitor, acquire his valuable industry relationships, and terminate him effectively forcing him out of the industry entirely based on Lyle's age and the competition restrictions imposed." (*Id.,* p. 11),
>
> **Count III:** "Defendants misrepresented their true intentions in hiring Lyle and fraudulently induced Lyle to sign the noncompetition agreement." (*Id.,* p. 12), and
>
> **Count IV:** "Through their commonality of ownership and through Lyle's various communications with individuals and officers of KT Pacer and Kentucky Trailer, Defendants agreed and worked together to commit unlawful acts against Lyle." (*Id.,* p. 13).

Defendants ask the court to dismiss each count, arguing the court lacks personal jurisdiction over Kentucky Trailer, Marmon, and Kirpes. Defendants alternatively argue Lyle's claims fail to meet the plausibility standard.

## STANDARD

When considering a Rule 12 motion, the court accepts the allegations in the plaintiff's complaint as true and views them in the light most favorable to the plaintiff. *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012); *see also Moore v. Cecil*, 488 F. Supp. 3d 1144, 1155 (N.D. Ala. 2020). If the facts as pleaded could give rise to an entitlement of relief, then the court must deny the defendant's motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). If, however, the court accepts the pleaded facts as true, and the plaintiff "still would not be entitled to relief, the court must grant the motion." *Moore*, 488 F. Supp. 3d at 1155.

To survive a Rule 12(b)(2) motion to dismiss, "the plaintiff has the burden of establishing a prima facie case of personal jurisdiction over a nonresident defendant." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002) (footnote omitted). A prima facie case of personal jurisdiction "is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Id.* (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). When deciding such a motion, the court looks to the factual allegations in the plaintiff's complaint and takes the facts as true "to the extent they are uncontroverted by defendants' affidavits." *Home Ins. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990).

## ANALYSIS

Defendants ask for dismissal on two bases: personal jurisdiction and plausibility. The court begins its analysis by evaluating personal jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). The court then turns its attention to plausibility.

### 1. Personal Jurisdiction, Rule 12(b)(2)

"[A] federal court generally undertakes a two-step analysis to determine whether there is personal jurisdiction over a nonresident defendant. First, the court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute. Second, if the court determines that the forum state's long-arm statute has been satisfied, it must then decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1272 (11th Cir. 2022) (citations omitted).

### A. Long Arm Statute

In this case, the court's inquiry for the first and second steps of its personal jurisdiction analysis merge: Alabama's long-arm statute grants jurisdiction over nonresidents to the fullest extent allowed by the Due Process Clause of the Fourteenth Amendment. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007); *see also* Ala. R. Civ. P. 4.2. So the only question is whether exercising personal jurisdiction over Defendants violates the Fourteenth Amendment's Due Process Clause.

### B. Due Process

"At bottom, due process prohibits the exercise of personal jurisdiction over a nonresident defendant unless its contacts with the state are such that it has a fair warning that it may be subject to suit there." *Del Valle*, 56 F.4th at 1275 (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 360 (2021)). A nonresident defendant's contacts with a state can be evaluated one of two ways: "(1) the plaintiff can show that the defendant has continual and systematic contact with the State (i.e. 'general jurisdiction'), or (2) the plaintiff can establish a substantial connection between the conduct at issue and the state where the lawsuit was filed (i.e. 'specific jurisdiction')." *Moore*, 488 F. Supp. 3d at 1156.

### i.    General Jurisdiction

"The paradigm forum for the exercise of general jurisdiction . . . [is] one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (11th Cir. 2011). Kirpes is domiciled in Iowa. (Doc. 1-1, p. 2). Kentucky Trailer is an LLC with Marmon Holding being its only member; Marmon Holding is incorporated in Delaware with its principal place of business in Illinois, (doc. 1-1, p. 1–2). The court thus attributes Marmon Holdings' domicile to Kentucky Trailer. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("[A] limited liability company is a citizen of any state of which a member of the company is a citizen."). Because neither Kentucky Trailer, Marmon, nor Kirpes is at home in Alabama, the court lacks general personal jurisdiction over all three Defendants.

### ii.    Specific Jurisdiction

The only way then the court has personal jurisdiction over Kentucky Trailer, Marmon, and Kirpes is if they are subject to its specific jurisdiction. When looking for specific jurisdiction, courts examine "whether (1) the plaintiff's claims 'arise out of or relate to' one of the defendant's contacts with the forum state; (2) the nonresident defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of 'fair play and substantial justice.'" *Del Valle*, 56 F.4th at 1275 (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). Lyle must plead enough facts to establish the first two elements. *See id*. If he does, Kentucky Trailer, Marmon, and Kirpes must then "make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id*. (quotation marks omitted).

As to Kentucky Trailer and Marmon, Defendants argue that neither entity "[is] registered to do business in Alabama, they do not own or operate an office in Alabama, and there is no allegation that they employ

any residents of Alabama." (Doc. 9, p. 12). Based on the complaint, the only connection Kentucky Trailer and Marmon have to Alabama is through the subsidiary, KT Pacer. *Consol. Dev. Corp. v. Sherritt, Inc*, 216 F.3d 1286, 1293 (11th Cir. 2000) ("Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there.") (internal citation omitted). And as to Kirpes, Defendants assert that "[t]he Complaint [] lacks allegations that Kirpes' allegedly wrongful actions were aimed at Alabama or took place in Alabama. Rather, Plaintiff only alleges that Kirpes wrote him a letter, and made a phone call." (Doc. 9, p. 13).

"When a federal court is considering a challenge to its jurisdiction over a defendant . . ., the district judge has considerable procedural leeway in choosing a methodology for deciding the motion. The court may receive and weigh the contents of affidavits and any other relevant matter submitted by the parties to assist it in determining the jurisdictional facts." 5B Fed. Prac. & Proc. Civ. § 1351 (4th ed.); *Louis Vuitton*, 736 F.3d 1350; *see, e.g.*, *Snow v. DirecTV, Inc.*, 450 F.3d 1314 (11th Cir. 2006). In reply to the motion to dismiss, Lyle submits a response and sworn declaration attesting to the following facts:

| Kentucky Trailer | "Though I was employed at KT Pacer, all my paychecks were paid by Kentucky Trailer not KT Pacer . . . In addition, all group health insurance and benefits were provided through Kentucky Trailer." (Doc. 17-1, ¶7).<br><br>"[I]t was Kentucky Trailer that first contacted Lyle in 2023 after Lyle expressed and interest to the headhunter. . .  Conversations occurred between Lyle and Gary Smith, the President and CEO of Kentucky Trailer ensued, all while Lyle was living and working in Alabama." (Doc. 17, p. 7–8).<br><br>"Not only does Kentucky Trailer own KT Pacer but it also routinely places orders for trailer components to be fabricated by KT Pacer at its Trussville location." (*Id.,* p. 9). |
|---|---|

| Marmon | "Kirpes reported directly to Bryan Metz, a Marmon President who lives in Vestavia Hills, Alabama . . . Marmon's human Resource Director Todd Hollifield is also a resident of Vestavia Hills, Alabama. Mr. Hollifield, on behalf of Marmon, would routinely visit KT Pacer's office in Trussville . . . Hollifield also attended and took part in my termination call . . . ." (Doc. 17-1, ¶¶11, 14).<br><br>"In Alabama alone, Marmon controls three bulk feed trailering companies, namely KT Pacer, Fontaine Trailer, and Webb Wheel." (Doc. 17, p. 10). |
|---|---|
| Kirpes | "Kirpes visited the state of Alabama at least once a quarter but oftentimes more than that. Kirpes kept me informed each time he traveled to Alabama, and during each visit we would meet at the Trussville office to discuss operations." (Doc. 17-1, ¶9).<br><br>"Not only would Kirpes visit KT Pacer's office in Trussville while visiting Alabama, but Kirpes also held several in-person meetings with officers of other Marmon commercial trailer divisions that are also located within Alabama. Kirpes met the President of Fontaine Trailer at its offices in Springville, Alabama and Haleyville, Alabama. Kirpes also met with the President of Webb Wheel in Cullman, Alabama where Webb Wheel operates." (Doc. 17-1, ¶12).<br><br>"Kirpes markets and promotes KT Pacer throughout Alabama, particularly to other Marmon portfolio companies while also maintaining supplier and business contacts within the state." (Doc. 17, p. 11). |

Based on these facts, Lyle carried his burden of establishing the court has specific jurisdiction over KT Pacer, Kentucky Trailer, Marmon, and Kirpes. Each party purposefully availed itself to privileges and benefits of doing business in Alabama. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). None of these Defendants' contacts with

Alabama could reasonably be described as "random, fortuitous, or attenuated," or perpetuated solely through the "unilateral activity of another party or third person." *Id.* at 475 (internal citations omitted).

1. *Relatedness*: Lyle's claims arise from and relate to Kentucky Trailer, Marmon, and Kirpes' contacts with Alabama. The only contact these Defendants had with Alabama relate to their respective businesses. Without their interactions with the state, Lyle's claims (all of which relate to his employment) would not have occurred.

2. *Purposeful Availment*: Kentucky Trailer, Marmon, and Kirpes all have "deliberate" and "continuous [business] obligations" in Alabama. *Id.* at 476. Kentucky Trailer continuously communicated with Lyle, an Alabama resident, by issuing his pay checks and health benefits. Two of Marmon's highest-ranking executives (one of whom participated in Lyle's termination) are Alabama residents and do business on behalf of Marmon in the state. Marmon also owns three Alabama-based companies. Finally, Kirpes spent significant time in Alabama and communicating with Alabama residents on behalf of KT Pacer. Kentucky Trailer, Marmon, and Kirpes all benefit financially from its Alabama contacts.

3. *Fair Play and Substantial Justice*: To determine whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice, the court considers "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the interstate judicial system's interest in resolving the dispute." *Louis Vuitton*, 736 F.3d at 1277 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quotation marks omitted)). Because Kirpes, Marmon, and Kentucky Trailer deliberately and continuously engage in business and physically visit Alabama, the court finds the burden of defending against suit in the state low. Lyle is an Alabama resident; the state has a high interest in adjudicating the disputes of its citizens. And because Lyle has less resources than the corporate Defendants, he has a high interest in having his case heard in Alabama.

Defendants argue that finding the existence of specific jurisdiction violates fair play and substantial justice because "[f]orcing these foreign Defendants to defend a case in Alabama will work a substantial hardship on the companies and Kirpes." (Doc. 9, p. 15). But, as stated above, Defendants bear the burden of establishing a "***compelling*** case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Del Valle*, 56 F.4th at 1275 (emphasis added). One conclusory statement with no factual support fails to meet that burden.

—

Because the court finds Kirpes, Marmon, and Kentucky Trailer have sufficient minimum contacts with Alabama to be subject to this court's specific personal jurisdiction, and the court is not compelled that trying this case in Alabama would be unfair to Defendants, the court **DENIES** Defendants' motion to dismiss under Rule 12(b)(2).

## 2. Plausibility

The court now turns to Defendants' argument for dismissal under Rule 12(b)(6).

### A. Counts I–III

As laid out, Lyle's first three claims are for age discrimination, fraudulent inducement, and fraudulent misrepresentation. The court must dismiss all three claims for failing to meet the pleading standard.

In each count, Lyle refers to "the defendants" but never specifies who took what adverse action against him. *See* (doc. 1-1, p. 6–10). Because lumping Defendants together fails to give each Defendant fair notice of what he/it must defend against, Lyle's claims are deficiently pleaded. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Lyle also fails to include the necessary substantive facts to establish prima facie cases of each claim. Starting with Count 1: though Lyle was over the age of 40 at all relevant times (making him a protected person under the AADEA), Lyle never alleges any facts to support his contention

that his termination was because of his age. Ala. Code §25-1-21; *see* (doc. 1-1, p. 2–8). Lyle never alleges Defendants even knew his age, let alone made employment decisions based on it.

Counts II and III involve fraud allegations, which subjects them to Rule 9's heightened pleading standard. Fed. R. Civ. Pro. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). As Defendants point out, Count II "does not identify what was said that is supposedly false, the time and place of these undisclosed alleged false communications, or who said the same." (Doc. 9, p. 23). And Count III doesn't "(1) alleg[e] any false statement concerning the subject matter of this unknown noncompetition agreement, (2) identify[] who made any such statement and when, or (3) describe[e] how or why Plaintiff relied on any such statement to execute the unidentified noncompetition agreement . . . ." (*Id.* at 24). Without these facts, Lyle cannot plead a viable fraud claim under Rule 9.

The court thus **DISMISSES** Counts I–III under Rule 12(b)(6). Because this is Lyle's first bite at the apple, the court's dismissal is **WITHOUT PREJUDICE.** The court will give Lyle one chance to replead Counts I, II, and III.

### B. Count IV

Lyle alleges civil conspiracy in Count IV. Unlike Counts I–III, Lyle's Count IV does name specific defendants. (Doc. 1-1, p. 13). But the court nevertheless **DISMISSES** Count IV under the intracorporate conspiracy doctrine.

"[T]he intracorporate-conspiracy doctrine holds that a corporation may not be held liable for any alleged conspiracy with its own employees or agents." *M & F Bank v. First Am. Title Ins.*, 144 So.2d 222, 234 (Ala. 2013). "This doctrine has been applied to bar claims of conspiracies between a limited liability company and its members, and between a

parent company and its wholly owned subsidiary." *Tuscaloosa Hyundai, Inc. v. Hyundair Motor Am.*, Inc., No. 7:21-cv-571, 2023 WL 6296929, at *10 (N.D. Ala., Sep. 27, 2023) (discussing the intracorporate conspiracy doctrine under Alabama law). Applying these principles, Lyle can allege no configuration of defendants participating in a civil conspiracy that the intracorporate conspiracy doctrine won't bar. Accordingly, the court's dismissal of Count IV is **WITH PREJUDICE**.

## CONCLUSION

In sum, the court rejects Defendants' argument that it lacks personal jurisdiction over Kentucky Trailer, Marmon, and Kirpes under Rule 12(b)(2). But the court agrees with Defendants that Lyle fails to state a plausible claim under Rule 12(b)(6). The court thus **DISMISSES WITHOUT PREJUDICE** Counts I, II, and III. If Lyle chooses to replead these claims, he must do so on or before **September 9, 2025**. The court **DISMISSES WITH PREJUDICE** Count IV, meaning that Lyle cannot replead that count in his amended complaint.

**Done** and **Ordered** on August 26, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE